IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAFED THABET,<br><br>                    Petitioner,<br><br>      vs.<br><br>MICHAEL MARTELL, Warden, Mule Creek State Prison,<br><br>                    Respondent. | No. 2:09-cv-01284-JKS<br><br>MEMORANDUM DECISION |

Hafed Thabet, a state prisoner appearing *pro se*, filed a petition for Habeas Corpus Relief Under 28 U.S.C. § 2254. Thabet is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the Mule Creek State Prison, Ione. Respondent has answered. Thabet has not replied.

I. BACKGROUND/PRIOR PROCEEDINGS

In July 1994 Thabet was convicted in the Amador County Superior Court of Murder in the Second Degree (Cal. Penal Code § 187(a)), with an enhancement for use of a firearm (Cal. Penal Code § 12022.5(a)). The trial court sentenced Thabet to an aggregate prison term of 20 years to life. Thabet does not challenge his conviction or sentence in this proceeding.

In October 2007 Thabet appeared at a parole-suitability hearing before the California Board of Parole Hearings ("Board"). After determining that Thabet would pose an unreasonable risk of danger to society or threat to public safety if released from prison, the Board found Thabet unsuitable for parole. Parole was denied for a period of two years. Thabet filed a timely petition

for habeas relief in the Amador County Superior Court. The Amador County Superior Court denied relief in an unpublished, partially reasoned decision. Thabet's subsequent petition for habeas relief to the California Court of Appeal, Third Appellate District, was summarily denied without opinion or citation to authority. The California Supreme Court summarily denied Thabet's petition for habeas relief without opinion or citation to authority on March 11, 2009. Thabet timely filed his Petition for relief in this Court on May 11, 2009.

The facts of Thabet's underlying conviction, as recited by the Board, are:

> The offense occurred on May 19, 1993 at the Pine Grove Exxon Service Station in Pine Grove. According to witnesses, [Thabet] went into the service station office and purchased a pack of cigarettes. [Thabet] then walked to the service island where the victim was pumping gas into his vehicle. The victim had his back toward [Thabet]. [Thabet] was seen raising a handgun into the air as he was walking toward the victim. When [Thabet] got approximately three to five feet away from the victim, he began firing the weapon. After the first shot, the victim fell to the ground. [Thabet] walked toward him and continued firing. [Thabet] then ran to a waiting vehicle driven by Tamin, T-A-M-I-N, Hauter, H-A-U-T-E-R (co-defendant). The vehicle left the area at a high rate of speed. After traveling approximately nine and a half miles, the co-defendant stopped the vehicle and surrendered to police officers. Defendants were arrested without incident.[1]

## II. GROUNDS RAISED/DEFENSES

Although set forth in three separate grounds, in his Petition Thabet raises a single subsatantive ground cognizable in a federal habeas proceeding: the determination that he posed an unreasonable risk of danger to society or threat to public safety if released from prison was unsupported by some evidence. Respondent does not assert any affirmative defense.[2]

---

[1] Docket No. 8-1, pp. 58-59.

[2] *See* Rules—Section 2254 Cases, Rule 5(b).

III.  DISCUSSION

In denying Thabet parole, the Board held:

     **PRESIDING COMMISSIONER GARNER:** [. . . .] Mr. Thabet, the Panel has reviewed all the information received from the public and relied on the following circumstances in concluding that you're not yet suitable for parole and you would pose an unreasonable risk of danger to society or threat to public safety if released from prison.  We certainly considered the gravity of this offense, and we also considered the unique circumstances under which the offense was committed, and also that this was a fact to plea to Second Degree Murder.  That being said, we considered many factors.  We started with the commitment offense, and we noted that it was carried out in an especially cruel and callous manner and that the victim in this case, Mr. Ahmed Alharsami, A-L-H-A-R-S-A-M-I, on the 19th of May, 1993, was shot and died as a result of the wounds.  The Panel notes the offense was carried out in a very dispassionate manner, and that the victim was at a gas station.  There's different theories as to whether you had stalked the victim or just came upon him by circumstances.  In either event, the victim fell to the ground, apparently from your indication was crying, he turned to leave and you chose at that point to turn around and fire the entire cylinder of weapons at the victim, and again, the victim died as a result of one of the wounds.  The Panel did note that the motive for this crime is certainly anchored in the origins of the cultural issues, in the Islamic issues, as a result of the harm that was done to one of your family members.  The conclusions were drawn from the statement of facts that were contained in the probation officer's report dated the 16th of August, 1994.  It's been previously read into the record and at this point will be adopted by reference.  So far as your previous record, the Panel noted that you did not have any record as a juvenile or as an adult, and so far as your institutional behavior, you've done well.  You've only got one 128 and one 115, both being in the month of March, 1995.  The psychological exam by Dr. Weber from January 2005 is not favorable to your interest, and the Doctor's conclusion does indicate a low to moderate risk for future violence.  The Doctor's comments were considered.  We also noted that the exam is a bit dated, and what we're gong [*sic*] to do is we're going to request that a new exam be prepared before your next hearing.  I did in the request make a specific reference if they could by any means identify someone that's familiar with Islamic issues so that there could be a better understanding of the cultural issues and also the religious issues that may have had some bearing on this offense.  We note so far as the parole plans, that you do have parole plans both in Yemen and the United States.  The 3042 notices, we noted and considered the comments in opposition to the granting of parole by the District Attorney from Amador County.  We also noted that we considered the comments from the victim's next of kin that were presented to us today.  I certainly want to commend you for your programming and your vocations that you've achieved.  However, in

a separate decision the hearing Panel finds that you have been convicted of murder and it's not reasonable to expect that parole would be granted at a hearing during the next two years. The specific reason for this finding is as follows: Again, in a separate decision, that the offense was committed in an especially cruel manner, specifically the guilty plea to the May 19, 1993 killing of Mr. Ahmed Alharsami, who died as a result of the wounds that he received from the weapon that you were carrying, which was a .38 caliber weapon. The Panel noted that the offense was carried out in a manner that demonstrates an exceptional callous disregard for human suffering in that the victim's behavior indicated that he knew of his pending peril, as indicated by the victim falling to the ground on his knees and crying. What we're going to do is again we're going to deny you for two years. We're going to recommend that you remained [*sic*] disciplinary free, that you continue to program as you have been, to cooperate with the clinicians when it comes time for your next exam.[3]

Thabet contends that the only arguable factor upon which the Board relied was the underlying commitment offense, and that the Board failed to recite the evidence upon which it relied in finding the other statutory factors cited in denying him parole. In rejecting Thabet's contention, the Amador County Superior Court held:

> The petitioner bears the burden of stating a prima facie case entitling him to relief if true. (In re Bower (1985) 38 Ca1.3d 865.) When the petition fails to reveal facts sufficient to establish even a prima facie case for relief, summary denial is appropriate. (People v. Jackson (1980) 28 Ca1.3d 264.)
> To satisfy the initial burden of pleading adequate grounds for relief, an application for habeas corpus must be made by petition, and if the imprisonment is alleged to be illegal, the petition must set forth the reason why said imprisonment is illegal. (Penal Code §1474; see also People v. Romero (1994) 8 Cal.4th 728, 737.) The petition should state fully and with particularity the facts on which relief is sought, as well as include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations. (People v. Karis (1988) 46 Ca1.3d 612, 656; In re Swain (1949) 34 Cal.2d 300, 304; People v. Duvall (1995) 9 Cal.4th 464.) Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing. (People v. Karis, supra.)
> The Board of Parole Hearings has great discretion in determining suitability for parole. (In re Rosenkrantz (2002) 29 Cal.4th 616.) Given that

---

[3] Docket No. 8-2, pp. 53-56.

discretion, the court will not disturb a decision of the Board of Parole Hearings if "some evidence" supports decision. (Superintendent v. Hill (1985) 472 U.S. 445, 455-456.)

Petitioner has failed to state a prima facie case for relief. Petitioner fails to set forth sufficient facts, beyond his conclusory allegations, to demonstrate that his Constitutional and/or statutory rights were violated. Moreover, there is some evidence to support the decision of the Board of Parole. Therefore, based upon the foregoing, the petition is denied.[4]

After briefing in this case was completed, the United States Court of Appeals for the Ninth Circuit, sitting en banc, decided *Hayward v. Marshall*.[5] This Court must decide the case on the law as it exists at the time it renders is decision and, if the law changes while the case is pending, this Court applies the new rule.[6] Thus, although it establishes a new rule, the holding in *Hayward* is controlling.

In this case, this Court "need only decide whether the California judicial decision approving the [Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or 'was based on an unreasonable determination of the facts in light of the evidence.'"[7] By its reference to § 2254(d), the Ninth Circuit implicitly, if not explicitly, directed this Court to apply § 2254(d) to the decisions of the California Supreme Court, using the same standards applied to the determination of the law as established by the United States Supreme Court.

---

[4] Docket No. 8-5, pp. 2-3.

[5] 603 F.3d 546 (9th Cir. 2010) (en banc).

[6] *See Thorpe v. Housing Authority of City of Durham*, 393 U.S. 268, 281-82 (1969); *Lambert v. Blodgett*, 393 F.3d 943, 973 n.21 (9th Cir. 2004).

[7] *Hayward*, 603 F.3d at 563 (footnotes citing 28 U.S.C. § 2254(d) omitted).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."[8] The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[9] When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[10] The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[11] Consequently, it appears that under the mandate of *Hayward*, this Court must canvas and apply California law as it existed at the time of the state court decision to the facts in the record as presented to the state court.

The mandate in *Hayward* is that this Court must review the decisions of state courts applying state law—in effect serving as a super-appellate court over state-court decisions. This requirement is in tension with the holdings of the Supreme Court. It is a fundamental precept of

---

[8] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[9] *Williams*, 529 U.S. at 412.

[10] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[11] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

dual federalism that the states possess primary authority for defining and enforcing the criminal law.[12]  "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[13]  This principle applied to federal habeas review of state convictions long before AEDPA.[14]  A federal court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state supreme court's interpretation of the law.[15]

Respondent argues that California prisoners have no liberty interest in parole, and that if they do, the only due process protections available are a right to be heard and a right to be informed of the basis for the denial.[16]  That is, Respondent contends that there is no due process

---

[12] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[13] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[14] *See Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law").

[15] *See Bradshaw*, 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

[16] *See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 15 (1979).

right to have the result supported by sufficient evidence. Because they are contrary to binding Ninth Circuit law,[17] Respondent's arguments are without merit.

At the time that the Board, Amador County Superior Court, and California Court of Appeal rendered their decisions, the California "some evidence" rule was embodied in *In re Rosenkrantz*[18] and *In re Dannenberg*.[19] Subsequent to those decisions, but prior to the time that the California Supreme Court rendered its decision in this case, the California Supreme Court, applying *Rosenkrantz* and *Dannenberg*, decided *In re Lawrence*[20] and *In re Shaputis*.[21]

In *Rosenkrantz*, the California Supreme Court held:

> [. . . .] Due process of law requires that [the Board's] decision be supported by some evidence in the record. Only a modicum of evidence is required. Resolution of any conflicts in the evidence and the weight to be given the evidence are matters within the authority of the [Board]. [. . . .] [T]he precise manner in which the specified factors relevant to parole suitability are considered and balanced lies within the discretion of the [Board] . . . . It is irrelevant that a court might determine that evidence in the record tending to establish suitability for parole far outweighs evidence demonstrating unsuitability for parole. As long as the [Board's] decision reflects due consideration of the specified factors as applied to the individual prisoner in accordance with applicable legal standards, the court's review is limited to ascertaining whether there is some evidence in the record that supports the [Board's] decision.[22]

---

[17] *See Pirtle v. California Bd. of Prison Terms*, 611 F.3d 1015, 1020 (9th Cir. 2010); *Cooke v. Solis*, 606 F.3d 1206, 1213-14 (9th Cir. 2010) (citing *Hayward*, 603 F.3d at 561-64); *Pearson*, 606 F.3d at 610-11 (same).

[18] 59 P.3d 174 (Cal. 2002).

[19] 104 P.3d 783 (Cal. 2005).

[20] 190 P.3d 535 (Cal. 2008).

[21] 190 P.3d 573 (Cal. 2008).

[22] *Rosenkrantz*, 59 P.3d at 218. Quoted with approval in *Shaputis*, 190 P.3d at 585.

The California Supreme Court then held:

> The nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole. (Citations omitted.) Although the parole authority is prohibited from adopting a blanket rule that automatically excludes parole for individuals who have been convicted of a particular type of offense, the authority properly may weigh heavily the degree of violence used and the amount of viciousness shown by a defendant. [. . . .]
>
> In some circumstances, a denial of parole based upon the nature of the offense alone might rise to the level of a due process violation—for example where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense. Denial of parole under these circumstances would be inconsistent with the statutory requirement that a parole date normally shall be set "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public . . . ." (Pen.Code, § 3041, subd. (a).) "The Board's authority to make an exception [to the requirement of setting a parole date] based on the gravity of a life term inmate's current or past offenses should not operate so as to swallow the rule that parole is 'normally' to be granted. Otherwise, the Board's case-by-case rulings would destroy the proportionality contemplated by Penal Code section 3041, subdivision (a), and also by the murder statutes, which provide distinct terms of life without possibility of parole, 25 years to life, and 15 years to life for various degrees and kinds of murder. (Pen. Code, § 190 et seq.) [¶] Therefore, a life term offense or any other offenses underlying an indeterminate sentence must be particularly egregious to justify the denial of a parole date." ( Citation omitted.)[23]

In *Dannenberg* the California Supreme Court explained:

> [. . . .]  So long as the Board's finding of unsuitability flows from pertinent criteria, and is supported by "some evidence" in the record before the Board [citing *Rosenkrantz*], the overriding statutory concern for public safety in the individual case trumps any expectancy the indeterminate life inmate may have in a term of comparative equality with those served by other similar offenders. Section 3041 does not require the Board to schedule such an inmate's release when it reasonably believes the gravity of the commitment offense indicates a continuing

---

[23] *Id.* at 222; *see Shaputis*, 190 P.3d at 584-85 ("The record supports the Governor's determination that the crime was especially aggravated *and*, importantly, that the aggravated nature of the offense indicates that the petitioner poses a current risk to public safety." (emphasis in the original)).

9

danger to the public, simply to ensure that the length of the inmate's confinement will not exceed that of others who committed similar crimes.[24]

The California Supreme Court then held:

> Thus, there clearly was "some evidence" (citing *Rosenkrantz*) to support the Board's determination that Dannenberg's crime was "especially callous and cruel," showed "an exceptionally callous disregard for human suffering," and was disproportionate to the "trivial" provocation. Accordingly, under *Rosenkrantz,* the Board could use the murder committed by Dannenberg as a basis to find him unsuitable, for reasons of public safety, to receive a firm parole release date.[25]

The Board must, however, "point to factors beyond the minimum elements of the crime for which the inmate was committed" that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released.[26] The Board "may credit evidence suggesting the inmate committed a greater degree of the offense than his or her conviction evidences."[27] In *Lawrence*, however, the California Supreme Court rejected the argument "that the aggravated circumstances of a commitment offense inherently establish current dangerousness," holding:

> [W]e conclude that although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of *current* dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of

---

[24] *Dannenberg*, 104 P.3d at 795.

[25] *Id.* at 803.

[26] *Id.* at 786-87, 802-803; *see Rosenkrantz*, 59 P.3d at 222.

[27] *Dannenberg*, 104 P.3d at 803 n.16 (citing *Rosenkrantz*, 59 P.3d at 219).

the commitment offense remain probative to the statutory determination of a continuing threat to public safety.[28]

This Court must, therefore, determine whether the decisions of the California courts upholding the Board's denial of parole complied with California law as expressed in *Lawrence* and *Shaputis*. Because state court judgments carry a presumption of finality and legality, Thabet has the burden of showing by a preponderance of the evidence that he merits habeas relief.[29] Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[30] Both the subsidiary findings on the applicable factors and the ultimate finding of some evidence constitute factual findings.[31]

Although the decisions of the Board, Amador County Superior Court, and California Court of Appeal predated the California Supreme Court decisions in *Lawrence* and *Shaputis*, the decision of the California Supreme Court came after *Lawrence* and *Shaputis*. In his petition for habeas relief before the California Supreme Court, Thabet presented the same evidence and arguments that he had presented to the Amador County Superior Court.[32] Thabet also submitted the decision of the Amador County Superior Court to the California Supreme Court. In its

---

[28] *Lawrence*, 190 P.3d at 554-55; *see Cooke*, 606 F.3d at 1214.

[29] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[30] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[31] *Cooke*, 606 F.3d at 1216.

[32] Under California's unique habeas procedure, a defendant who is denied habeas relief in the superior court files a new original petition for relief in the court of appeal. If denied relief by the court of appeal, the defendant has the option of either filing a new, original petition for habeas relief or a petition for review of the court of appeal's denial in the California Supreme Court. This is considered the functional equivalent of the appeal process. *See Carey v. Saffold*, 536 U.S. 214, 221-222 (2002).

summary denial, the California Supreme Court is presumed to have decided the case on the merits,[33] and adopted the reasoning of the Amador County Superior Court.[34]  The California Supreme Court is also presumed to have correctly applied California law.[35]  This presumed adoption of the reasoning of the Amador County Superior Court conclusively establishes that the California Supreme Court was of the opinion that the Board's decision did not violate the California "some evidence" rule as stated in *Lawrence* and *Shaputis*.  Further argument on that issue is, therefore, foreclosed.[36]

Even if this Court were to independently review the decision of the Amador County Superior Court, the result would not change.  With respect to the underlying commitment offense, the applicable regulation provides:

> (1) Commitment Offense.  The prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:
> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
> (C) The victim was abused, defiled or mutilated during or after the offense.
> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.[37]

---

[33] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

[34] *Ylst*, 501 U.S. at 802-03.

[35] *See Estelle*, 502 U.S. at 67-68; *Walton,* 497 U.S. at 653; *Engle*, 456 U.S. at 119; *Bell,* 543 U.S. at 455.

[36] *See Bradshaw*, 546 U.S. at 74, 76-78.

[37] Cal. Code Regs., tit. 15, § 2402(c).

The evidence clearly supports a finding that this case falls within the scope of (1)(B) and (1)(E), and possibly falls within the scope of (1)(D). Under California law, a court neither re-weighs the evidence nor substitutes it's discretion for that of the Board. Judicial review of a decision denying parole is "extremely deferential."[38] Thus, under *Rosenkrantz* and *Dannenberg*, this Court could not say that the decision of the Amador County Superior Court was contrary to, or involved an unreasonable application of California law at the time it was decided, or was based on an unreasonable determination of the facts in light of the evidence. On the other hand, because *Hayward*, *Pearson*, and *Cooke* require that *Lawrence* and *Shaputis* be applied, this Court must look to determine whether there was some factor in addition to the underlying commitment offense to support denial of parole.

Because the state-court decision does not reveal which of the other factors, other than the underlying conviction, supported denial of parole, this Court will examine the other factors referred to by the Board in denying Thabet parole that would support a determination that Thabet posed an unreasonable risk of danger to society or threat to the safety of the public if released on parole.[39]

In addition to the underlying commitment offense, the only other negative factor the Board relied on was a psychological evaluation rating Thabet as low to moderate for future violence.[40] This unfavorable psychological evaluation, standing alone, is a sufficient additional factor to support the Board's finding of an unreasonable risk of danger to society or a threat to

---

[38] *Rosenkrantz*, 59 P.3d at 210.

[39] *See Cooke*, 606 F.3d at 1214.

[40] Docket No. 8-2, p. 55-56.

public safety.[41]  Applying *Lawrence* and *Shaputis*, this Court cannot say that the decision of the Amador County Superior Court was contrary to, or involved an unreasonable application of California law at the time it was decided, or was based on an unreasonable determination of the facts in light of the evidence.  Thabet is not entitled to relief.

### IV.  ORDER

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[42]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[43]

The Clerk of the Court is to enter final judgment accordingly.

Dated:  December 22, 2010.

/s/ James K. Singleton, Jr.<br>JAMES K. SINGLETON, JR.<br>United States District Judge

---

[41] *Hayward*, 603 F.3d at 563.

[42] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).

[43] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.